IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE, NASHVILLE DIVISION

| | |
|---|---|
| JANE DOE #1 (SLA),<br>JANE DOE #2 (ALW) and<br>JOHN DOE #1 (FB),<br><br>Plaintiffs,<br><br>vs.<br><br>WILLIAM B. LEE, Governor of the State of Tennessee, and DAVID B. RAUSCH, Director of the Tennessee Bureau of Investigation, in their official capacities,<br><br>Defendants. | Case No. 3:23-cv-0786 |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION**

Plaintiffs are Tennessee residents who must comply with the Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification, and Tracking Act of 2004 for the rest of their lives. *See* Tenn. Code Ann. §§ 40-39-201–40-39-218 (West 2021) ("SORA"). Plaintiffs are subject to SORA based solely on a sex offenses that occurred before SORA took effect in 2004. This Court has found SORA to be unconstitutional when applied to pre-enactment offenses such as this Plaintiffs' offenses. *Doe v. Lee and Rausch*, No. 3:21-cv-00590, (M.D. Tenn. March 2, 2023) (Trauger, J.)

Plaintiffs bring this action to establish that SORA is unconstitutional as applied to him under Article I, section 10, clause 1 of the United States Constitution, which provides in relevant part: "No State shall…pass any…*ex post facto* Law" (the "Ex Post Facto Clause"). The Ex Post Facto Clause prohibits laws that impose retroactive punishment. A law imposes punishment if it is punitive in intent or punitive in effect. *See Smith v. Doe*, 538 U.S. 84, 92 (2003). To determine whether a law is punitive in effect, a court examines the statutory scheme "by reference to a vari-

ety of factors [commonly referred to as the *Mendoza-Martinez* factors] considered in relation to the statute on its face…." *Seling v. Young*, 531 U.S. 250, 262 (2001) (internal quotation marks omitted).

Applied to SORA, those factors demonstrate that SORA is punitive in effect on its face. While SORA purports to be a civil regulatory scheme, SORA imposes onerous restrictions and obligations that burden each Plaintiff's liberty in every aspect of his life. SORA publicly and falsely brands each Plaintiff as a "violent" sexual offender. SORA requires each Plaintiff to report in person every calendar quarter and within 48 hours for numerous other reasons. SORA forbids Plaintiffs to live, work, or merely be present within vast areas of the state, especially within urban areas. SORA forbids Plaintiffs to attend their children's school functions and sporting events. SORA imposes these restrictions and obligations on Plaintiffs for life. Violations of SORA are felonies punishable by mandatory minimum prison sentences. SORA's restrictions and obligations, individually and in combination, are punitive in effect. Thus, SORA's enforcement against each Plaintiff, based solely on an offense that occurred before SORA's effective date, has and continues to violate the Ex Post Facto Clause.

This violation of Plaintiffs' constitutional rights has and continues to irreparably harm Plaintiffs. *Vitolo v. Guzman*, 999 F.3d 353, 360 (6th Cir. 2021) ("[W]hen constitutional rights are threatened or impaired, irreparable injury is presumed[.]") (internal citations, quotation marks, and brackets omitted). Enjoining SORA's enforcement pending final judgment will not harm Defendants and will serve the public interest. *Id.* ("[N]o cognizable harm results from stopping unconstitutional conduct, so it is always in the public interest to prevent violation of a party's constitutional rights." *Id.* (internal citations, quotation marks, and brackets omitted). Plaintiff there-

fore requests the Court to preliminarily enjoin Defendants[1], their officers, agents, employees, servants, and attorneys, and all persons in active concert or participation with them (i) from applying SORA based on criminal offenses that occurred before SORA's effective date, (ii) from enforcing SORA against Plaintiff, including the continued publication of Plaintiff's information on the sex offender registry (the "SOR"), and (iii) to remove Plaintiff's information from the SOR.

**ARGUMENT**

On a Fed. R. Civ. P. 65 motion for preliminary injunction, courts must "consider four factors in determining whether a preliminary injunction should issue: (1) whether the moving party has shown a likelihood of success on the merits; (2) whether the moving party will be irreparably injured absent an injunction; (3) whether issuing an injunction will harm other parties to the litigation; and (4) whether an injunction is in the public interest." *Vitolo v. Guzman*, 999 F.3d 353, 360 (6th Cir. 2021). In *"constitutional cases, the first factor is typically dispositive"* because "when constitutional rights are threatened or impaired, irreparable injury is presumed" and "no cognizable harm results from stopping unconstitutional conduct, so it is always in the public interest to prevent violation of a party's constitutional rights." *Id.* (internal citations, quotation marks, and brackets omitted). Thus, courts "focus [their] analysis on the plaintiffs' likelihood of success on the merits." *Id.*

**I.     SORA imposes retroactive punishment in violation of the Ex Post Facto Clause.**

To succeed on the merits of his Ex Post Facto claim, Plaintiffs must establish that SORA imposes punishment for an offense Plaintiff committed before SORA's effective date. Plaintiff is likely to succeed on this claim for two reasons. First, as multiple District Judges in this District and the Eastern District of Tennessee have already held, SORA's restrictions and requirements in combination are "punitive in effect" under the Sixth Circuit's analysis in *Does #1-5 v. Snyder*, 834 F.3d 696 (6th Cir. 2016).[2] Second, as Plaintiffs' declaration establishes, SORA applies to each Plaintiff based solely on an offense committed years before its 2004 effective date.

### A. SORA's punitive character must be determined on the face of the statute.

The Ex Post Facto Clause prohibits "any law which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *Weaver v. Graham*, 450 U.S. 24, 28 (1981) (internal quotation marks and cita- tion omitted; emphasis added). The Supreme Court applies a two-step analysis to determine whether a statute imposes punishment:

> We must ascertain whether the legislature meant the statute to establish civil proceedings. If the intention of the legislature was to impose punishment, that ends the inquiry. If, however, the intention was to enact a regulatory scheme that is civil and nonpunitive, we must further examine whether the statutory scheme is so punitive either in purpose or ef- fect as to negate the State's intention to deem it civil.

---

[2] *See Doe #1 v. Lee, No. 3:21-CV-00590 (M.D. Tenn. March 3, 2023) (Trauger, J.)Doe #1 v. Lee*, No. 3:16-CV-02862, 2021 WL 428967, at *41 (M.D. Tenn. Feb. 8, 2021) (Richardson, J.); *Jackson v. Rausch*, No. 3:19-CV-377, 2020 WL 7496528, at *4 (E.D. Tenn. Dec. 21, 2020) (Jordan, J.); *Reid v. Lee*, 476 F.Supp.3d 684, 708 (M.D. Tenn. 2020) (Trauger, J.); *Doe v. Rausch*, 461 F. Supp. 3d 747, 769 (E.D. Tenn. 2020) (Reeves, C.J.); *Doe v. Rausch*, 382 F. Supp. 3d 783, 799–800 (E.D. Tenn. 2019) (Phillips, J.).

*Smith*, 538 U.S. at 92 (internal citations, quotation marks, and brackets omitted). Thus, a statute imposes punishment if it is punitive in intent or, despite being civil in intent, is nevertheless punitive "in purpose or effect."

To determine whether a statute intended to be civil is punitive in effect, a court does not consider "the effect that Act has on a single individual." *Seling*, 531 U.S. at 262. Rather, "courts must evaluate the question by reference to a variety of factors considered in relation to the statute **on its face**…." *Id.* (internal quotation marks omitted; emphasis added).[3] Those factors, commonly referred to as the *Mendoza-Martinez* factors, include:

> whether, in its necessary operation, the regulatory scheme: [1] has been regarded in our history and traditions as a punishment; [2] imposes an affirmative disability or restraint; [3] promotes the traditional aims of punishment; [4] has a rational connection to a nonpunitive purpose; or [5] is excessive with respect to this purpose.

*Smith*, 538 U.S. at 97 (citing *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168–169 (1963)). These factors focus "on the nature of the enactment itself, not the circumstances of the individual plaintiff. There is, for example, nothing offender-specific about whether something has histori- cally been regarded as a punishment, whether it comes into play only on a finding of scienter, or whether the behavior to which it applies is already a crime. … As the *Mendoza-Martinez* factors plainly account for, some legal consequences, in light of their nature, context, and social func- tion, simply *are punishments*, regardless of any variation in the individual's subjective experi-

---

[3] Given the rule in *Seling*, an Ex Post Facto challenge has characteristics of both "facial" and "as-applied" challenges. It is "as-applied" because it does not attack the statute in all applications, just its application to pre-enactment offenses. It is "facial" because the determination that a statute is punitive is made on its "face" and thus its not limited to the plaintiff's particular case. *Cf. John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010) ("The parties disagree about whether Count I is properly viewed as a facial or as-applied challenge. It obviously has characteristics of both: The claim is 'as applied' in the sense that it does not seek to strike the [statute] in all its applications, but only to the extent it covers referendum petitions. The claim is 'facial' in that it is not limited to plaintiffs' particular case, but challenges application of the law more broadly to all referendum petitions.") (internal citations omitted); *Green Party of Tennessee v. Hargett*, 791 F.3d 684, 691–692 (6th Cir. 2015) ("[A] claim can have characteristics of as-applied and facial challenges[.]").

ence of that consequence." *Doe v. Lee*, No. 3:21-CV-00028, 2021 WL 1907813, at *13 (M.D. Tenn. May 12, 2021) (Trauger, J.) (emphasis in original).

  **B.**  **SORA is punitive in effect under the Sixth Circuit's analysis in *Snyder*.**

For purposes of this motion, Plaintiffs assume SORA is civil in intent. Whether SORA is punitive in effect is determined using the *Mendoza-Martinez* factors as applied by the Sixth Circuit in *Snyder*[4], which held that Michigan's sex offender registry law was punitive in effect. 834 F.3d at 706. Using *Snyder*'s analytical framework, multiple District Judges in this District and the Eastern District of Tennessee have held that SORA is likewise punitive in effect.[5] As Judge Trauger recently held: "Virtually every observation that the Sixth Circuit made about the Michigan regime could be made about [SORA] with, at most, minimal tweaking. In terms of the multi-factor test, [SORA], like Michigan's law, imposes a system that, in many ways, is simply a modern hybrid of the traditional punishments of banishment, shaming, and probation or parole. It places significant restrictions on a registrant's physical freedom in the world, including by restricting where he can live or work and whether he can enter his children's schools. Its consequences are harsh, and there exist significant questions about whether any purpose beyond retribution and punishment could justify those consequences." *Doe v. Lee*, 2021 WL 1907813 at *13.

---

  [4] In *Cutshall v. Sundquist*, 193 F.3d 466 (6th Cir. 1999) and *Doe v. Bredesen*, 507 F.3d 998 (6th Cir. 2007), the Sixth Circuit rejected Ex Post Facto challenges to earlier versions of Tennessee's sex offender registry law. Multiple District Judges in this District and the Eastern District of Tennessee have held that those precedents do not bar an Ex Post Facto challenge to SORA because SORA is significantly different than those previous versions of the sex offender registry law. *Doe v. Lee*, 2021 WL 1907813 at *13; *see, also*, *Reid v. Lee*, 476 F. Supp. 3d at 706; *Doe v. Rausch*, 382 F. Supp. 3d at 788; *Doe v. Gwyn*, 2018 WL 1957788 at *7 n.6; *Doe v. Haslam*, 2017 WL 5187117, at *19–20.
  [5] *See* case cited *supra* note 1.

### 1. SORA resembles banishment, public shaming, parole, and probation and imposes affirmative disabilities and restraints.

The first and second *Mendoza-Martinez* factors are whether the statutory scheme "has been regarded in our history and traditions as a punishment" and whether it "imposes an affirmative disability or restraint[.]" *Smith*, 538 U.S. at 97. Regarding the first factor, *Snyder* held the law met "the general definition of punishment, has much in common with banishment and public shaming, and has a number of similarities to parole/probation" because it restricted where of- fenders may live, work, or be present, stigmatized them as dangerous without individualized as- sessment, required them to report in person, and imposed criminal penalties for failure to com- ply. 834 F.3d at 702–703. Regarding the second factor, *Snyder* held those geographic restrictions and reporting requirements constituted "direct restraints on personal conduct." *Id*. at 703.

SORA likewise resembles banishment because it restricts where offenders may live, work, or be present, Tenn. Code Ann. § 40-39-211(a) & (d) (West 2021). SORA prohibits of- fenders from residing or working within 1,000 feet from the property line of any public school, private or parochial school, licensed day care center, other child care facility, public park, play- ground, recreation center or public athletic field available for use by the general public, and pro- hibits offenders from standing, sitting "idly," or remaining within that same distance of those lo- cations if an offender "has reason to believe" minors are present and does not have a "reason or relationship involving custody of or responsibility for" a minor or "any other specific or legiti- mate reason for being there." Tenn. Code Ann. § 40-39-211(a) & (d) (West 2021). As Judge Trauger held in *Reid v. Lee*, without knowing the "the full number of parks, schools, child care facilities, and recreation areas in Nashville, the court can take judicial notice of what anyone else in the city can see: that those locations are numerous and spread throughout at least much of the city" and that "many jobs require an individual to spend at least some amount of time in or near

those facilities." 476 F. Supp. 3d at 707. The same notice can be taken of every urban area in this state, which leads to the conclusion that SORA banishes offenders from vast swathes of every populated area in the state of Tennessee.

SORA also resembles public shaming because it stigmatizes each Plaintiff and other offenders as "violent" without individualized assessment. Tenn. Code Ann. § 40-39-202(9) (2021). As Judge Trauger held in *Reid*, "The court can also take judicial notice of the fact that the phrase 'violent sexual offender,' when affixed to a person without explanation carries with it a significant stigma. 476 F. Supp. 3d at 707. As Plaintiff's experience with his neighbors and customers shows, that stigma has powerful, negative effects. (Pl's Dec. at ¶¶ 8, 13.)

Finally, SORA resembles probation and parole because of its in person reporting requirements, Tenn. Code Ann. § 40-39-204(b)(1) (2021), its extensive restrictions on where offenders may live, work, or be present, *id.* § 40-39-211(a) & (d), and its severe criminal penalties for failure to comply, *id.* § 40-39-208. Thus, the first and second *Mendoza-Martinez* support the conclusion that SORA is punitive in effect.

### 2. SORA seeks to incapacitate and deter offenders and imposes retribution for past acts.

The third *Mendoza-Martinez* factor is whether the statutory scheme "promotes the traditional aims of punishment[.]" *Smith*, 538 U.S. at 97. *Snyder* held that Michigan's law advanced the three traditional aims of punishment: incapacitation, retribution, and deterrence. 834 F.3d at 704. The law incapacitated offenders by keeping them away from opportunities to reoffend, the law was retributive because it applied to them based solely on past acts, and one of the law's ex- press purposes was to deter recidivism. *Id.* SORA likewise advances these three aims. First, SORA's restrictions on where offenders may live, work, or be present incapacitate them. Second, SORA is retributive because it applies based solely on offenders' prior convictions. Third, one of

SORA's express purposes is to deter recidivism. Tenn. Code Ann. § 40-39-201(b)(1) (West 2021). Thus, the third *Mendoza-Martinez* support the conclusion that SORA is punitive in effect.

### 3. There is no evidence SORA prevents future acts of sexual violence.

The fourth and fifth *Mendoza-Martinez* factors are whether the statutory scheme "has a rational connection to a nonpunitive purpose" and whether it "is excessive with respect to this purpose[.]" *Smith*, 538 U.S. at 97. *Snyder* held that Michigan's law bore only a tenuous connection to its non-punitive purpose of preventing future acts of sexual violence. 834 F.3d at 704–705. *Snyder* noted "recent empirical evidence" had cast "significant doubt" on the claim that "risk of recidivism risk posed by sex offenders is frightening and high," including a study sug- gesting that "sex offenders (a category that includes a great diversity of criminals, not just pedo- philes) are actually *less* likely to recidivate than other sorts of criminals." *Id.* at 704. *Snyder* pointed to another study concluding that sex offender registry laws "actually *increase* the risk of recidivism, probably because they exacerbate risk factors for recidivism by making it hard for registrants to get and keep a job, find housing, and reintegrate into their communities." *Id.* at 704–705. *Snyder* also noted the lack of empirical evidence "that residential restrictions have any beneficial effect on recidivism rates." *Id.* at 705. Finally, *Snyder* noted that Michigan's law made "no provision for individualized assessments of proclivities or dangerousness." *Id. Snyder* held the burdens imposed by the Michigan sex offender registry law were excessive in relation to its purpose because there was no evidence that the "difficulties the statute imposes on registrants" are counterbalanced by any positive effects." *Id.*

For purposes of this motion, Plaintiffs assume SORA has a non-punitive purpose of pre- venting future acts of sexual violence. To further that purpose, SORA imposes heavy burdens on offenders by restricting where they can live, work, or be present, classifying them as "violent," and requiring them to report in person multiple times per year. Yet there is no evidence these

heavy burdens prevent sexual violence. Nor is there evidence that all offenders pose the same risk of committing sexual violence, and it defies reason to think they would. To the contrary, it is reasonable to expect a person's risk of committing sexual violence to vary depending on factors like the nature of offense, the passage of time, subsequent offenses, and evidence of rehabilitation. Yet SORA takes none of this into account, imposing the same heavy burden on the twenty-year old rapist convicted last year and the octogenarian convicted of sexual battery forty years ago. Furthermore, SORA's restrictions limiting offenders' access to places where children are present apply regardless of whether the underlying offense involved a child, yet there is no evi- dence that a person who commits a sexual offense against an adult victim poses the same risk to a child as a person convicted of a child sexual offense. Thus, even if it could be shown that SORA *might* prevent sexual violence by *some* offenders, SORA's burdens are excessive in relation to that purpose. The fourth and fifth *Mendoza-Martinez* therefore support the conclusion that SORA is punitive in effect.

\* \* \*

*Snyder* held that Michigan's law was punitive in effect because it "brands registrants as moral lepers solely on the basis of a prior conviction," "consigns them to years, if not a lifetime, of existence on the margins," and "directly regulates where registrants may go in their daily lives…." 834 F.3d at 705. SORA likewise brands offenders like Plaintiff as "violent" based solely on their prior convictions, imposes lifetime restrictions on where they can live, work, or be present and lifetime obligations about when and where they must report, and provides no mechanism by which they can ever be removed from the sex offender registry. *Compare* Tenn. Code Ann. § 40-39-207(a)(1) (permitting certain offenders to apply for removal from the sex offender registry) to Tenn. Code Ann. § 40-39-207(g)(2) (requiring "violent" offenders to register for life)

(West 2021). Under *Snyder*'s analysis, SORA is punitive in effect and violates the Ex Post Facto Clause as applied to each Plaintiff.

II.     **Plaintiffs continue to suffer irreparable harm from SORA's enforcement.**

The Sixth Circuit has held that if "a constitutional right is being threatened or impaired, a finding of irreparable injury is mandated," *Bonnell v. Lorenzo*, 241 F.3d 800, 809 (6th Cir. 2001), or at least "irreparable injury is presumed," *Am. Civil Liberties Union Fund of Mich. v. Livingston Cty.*, 796 F.3d 636, 649 (6th Cir. 2015) (quoting *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012)). Plaintiffs' likelihood of success on the merits is therefore sufficient to establish this factor as well.

Yet Plaintiffs' irreparable harm "does not end with the abstract question of whether his constitutional rights are being honored." *Doe v. Lee*, 2021 WL 1907813, at *14–15 (M.D. Tenn. May 12, 2021). Plaintiffs have and continue to suffer from the violation of their rights in deeply personal ways.

Enjoining SORA's enforcement will harm no one and will serve the public interest.

The preliminary injunction factors of harm to others and public interest "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Removing Plaintiff from the sex offender registry pending this litigation will not unduly burden Defendants: "By its own terms, the registry is designed to have individuals added and removed from its rolls with regularity, so there is no reason to think that removing [Plaintiff] would be difficult, or that it would be difficult to re-add him at a later date if necessary. Indeed, any costs to the defendants appear to be so minimal that the court concludes that no cash surety would be necessary 'to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.' Fed. R. Civ. P. 65(c)." *Reid*, 476 F. Supp. 3d at 709. *See*

Tenn. Code Ann. § 40-39-207(a)(1) (West 2021).

Finally, it is well-established that "the public interest is served by preventing the violation of constitutional rights." *Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427, 436 (6th Cir. 2004). Granting Plaintiff preliminary injunctive relief from SORA's enforcement would honor "a core constitutional commitment, recognized since the nation's earliest days." *Reid*, 476 F. Supp. 3d at 709.

## CONCLUSION

For these reasons, Plaintiffs request the Court to preliminarily enjoin Defendants, their officers, agents, employees, servants, and attorneys, and all persons in active concert or participation with them (i) from applying SORA based on each Plaintiffs' criminal offenses that occurred before SORA's effective date, (ii) from enforcing SORA against Plaintiffs, including the continued publication of Plaintiffs' information on the SOR, and (iii) to remove Plaintiffs' information from the SOR.

August 23, 2023

Respectfully submitted:

/s/ John B. Nisbet III   BPR No. 13364
P.O. Box 531
Livingston, Tennessee 38570
931.267.6203
nisbetcle@gmail.com

Plaintiffs' Counsel

## CERTIFICATE OF SERVICE

I hereby certify that on August 23, 2023, Plaintiff's Memorandum in support of **Unopposed Motion for Preliminary Injunction** was filed electronically with the Court's electronic filing system. Notice of this filing will also be served on Assistant **Attorney General Miranda Jones Counsel for Defendants Lee and Rausch**, at miranda.jones@ag.tn.gov.

*s/ John B. Nisbet III*
John B. Nisbet III